# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUA VANG,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:15-cv-00549-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 19, 21, 22) |

## I.

## INTRODUCTION

Plaintiff Doua Vang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from a back disorder; mental disorders; history of hepatitis; gastroesophageal reflux disease; and a shoulder problem. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 9, 10.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on May 25, 2011. (AR 43.) Plaintiff's applications were initially denied on November 29, 2011, and denied upon reconsideration on June 26, 2012. (AR 59-62, 66-69.) Plaintiff requested and received a hearing before Administrative Law Judge Danny Pittman ("the ALJ"). Plaintiff appeared for a hearing on June 20, 2013. (AR 22-42.) On September 5, 2013, the ALJ found that Plaintiff was not disabled. (AR 7-17.) The Appeals Council denied Plaintiff's request for review on February 3, 2015. (AR 1-3.)

### A.  Relevant Hearing Testimony

Plaintiff testified at the June 20, 2013 hearing with the assistance of an interpreter. (AR 25-38.) Plaintiff was born on September 15, 1964. (AR 25.) He was 4 feet 11 inches tall and weighed 175 pounds on the date of the hearing. (AR 25-26.) Plaintiff is right-handed. (AR 26.) Plaintiff has a driver's license and drives two to three times per week for medical appointments or to go grocery shopping. (AR 27.)

Plaintiff did not attend school. He can read some Hmong, but cannot read or write English. (AR 27.) Plaintiff does understand English when it is spoken to him, but can only respond in simple conversation. (AR 27.) Plaintiff has not had any vocational training. (AR 28.) He joined the freedom fighters from 1975 to 1979 and came to the United States in 1988. (AR 28.) Plaintiff has not worked in the last fifteen years. (AR 28-29.)

Plaintiff is married and has eight children, the youngest being fifteen years old. (AR 26.) Plaintiff lives in a house with his wife and three of his children. Plaintiff's wife does not work and receives disability. (AR 26.) Plaintiff's wife has been on disability for a long time and he took care of the children before he got sick. (AR 27.) Presently the older children take care of his younger children. (AR 27.) Plaintiff received benefits from the government for his children when they were younger, but now they only receive MediCal. (AR 27.)

Plaintiff cannot work because of back pain. (AR 29.) He broke his shoulder and his arm is very weak and numb so he cannot "perform" anything. (AR 29.) Plaintiff is taking

1  medication for hepatitis B.  (AR 29.)  Plaintiff does not take any medication for depression or
2  anxiety.  (AR 29.)  He does see a psychiatrist once every two weeks.  (AR 30.)  Plaintiff has not
3  had any injections in his back and no doctor has recommended surgery.  (AR 30.)  His doctor is
4  continually referring him out for second opinions.  (AR 30-31.)  Plaintiff tried to do some
5  exercises for his back but they were too painful.  (AR 31.)  Plaintiff has a brace for his back that
6  he bought over the counter.  (AR 31.)  He uses a cane that his children gave to him because he
7  complains about back pain.  (AR 31.)

8  Plaintiff does not drink, smoke, or use illegal drugs.  (AR 32.)  Plaintiff takes medication
9  that helps his pain.  (AR 32.)  Plaintiff's pain is worse in the morning and gets better during the
10 day.  (AR 32.)  His pain goes from his belt line on his back and is aggravated by bending or
11 exertion.  (AR 32.)  Plaintiff is able to sit between ten to fifteen minutes before he has to stand up
12 and can stand for ten to fifteen minutes before he has to sit down.  (AR 32.)  Plaintiff can walk
13 about one block with rests.  (AR 33.)  Plaintiff can lift ten pounds.  (AR 33.)  Plaintiff is unable
14 to pick something up if he drops it and has trouble tying his shoes.  (AR 33.)  Plaintiff does not
15 have any problems with memory or concentration.  (AR 33.)  Plaintiff does not have trouble
16 getting along with people, but he does not want to be around other people.  (AR 33.)

17 Plaintiff spends his days staying home, sitting or lying around, watching a little
18 television, and going out to walk a little bit.  (AR 33.)  Plaintiff lies down two to three times a
19 day for two hours each time due to his back pain.  (AR 35-36.)  Plaintiff's medication helps his
20 pain and he has no side effects.  (AR 36.)  Plaintiff feels sad every day.  (AR 36.)  When he is
21 depressed he does not feel like doing anything.  (AR 36.)  Plaintiff becomes very depressed two
22 times per day for about thirty minutes.  (AR 36.)  When that happens, Plaintiff goes and takes a
23 cold shower.  (AR 36.)

24 Plaintiff is able to walk upstairs to his bedroom.  (AR 36.)  Plaintiff can kneel, but has
25 difficulty getting up when he stoops.  (AR 36.)  Plaintiff can balance and stand.  (AR 37.)  He
26 has great difficulties reaching overhead with his right arm.  (AR 37.)  Plaintiff can reach out
27 front to shoulder level with his right arm, but not overhead.  (AR 37.)  Plaintiff cannot use his
28 right arm on a repetitive basis due to weakness and numbness.  (AR 37.)  Plaintiff can only use

his right arm for five minutes. (AR 37.) When he rests for five minutes he is able to use his arm again. (AR 37-38.)

Plaintiff is able to bus tables, wash dishes, and use the microwave. (AR 33.) Plaintiff's children cook, wash most of the dishes, and do most of the household chores. (AR 33.) Plaintiff does the laundry, and grocery shopping. (AR 34.) Plaintiff does not go to the movies or restaurants. (AR 34.) Plaintiff visits with friends or family that live nearby. (AR 34.) Plaintiff used to do outside activities, like hunting, fishing, and camping, but does not do them anymore. (AR 34.) Plaintiff went fishing last year. (AR 35.) Plaintiff still has a valid fishing license. (AR 35.) Plaintiff cannot fish now, but goes to watch his children fish. (AR 35.) Plaintiff does not go to the mall and does not know how to use a computer. (AR 35.)

A vocational expert, Jose Chaparro, also testified at the hearing. (AR 39-41.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since the application date of May 25, 2011.

- Plaintiff has the following medically determinable impairments: alleged back disorder; alleged mental disorders; history of hepatitis; gastroesophageal reflux disease; and an alleged shoulder problem.

- Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore Plaintiff does not have a severe impairment or combination of impairments.

- Plaintiff has not been under a disability since the date the application was filed of May 25, 2011.

**III.**

**LEGAL STANDARD**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by finding that he did not have any severe impairments and ending his analysis at step two. Defendant responds that substantial evidence supports the ALJ's findings that Plaintiff did not demonstrate he had a severe medical impairment as defined by the Social Security Regulations. Plaintiff replies that he has submitted objective evidence to survive the de minimus screening to show that his impairments are severe.

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The burden is on the claimant to prove that he is disabled at steps one through four, at step five the burden shifts to the Commissioner to show that there are a significant number of jobs in the national community that the claimant can perform. Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1222 (9th Cir. 2009).

As described above, at step two the ALJ is to consider the medical severity of the impairments to determine if they meet the durational requirements under the Act. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.152(c). Basic work activities are the abilities and aptitudes necessary to do most

jobs. 20 C.F.R. §404.1521(b). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.' " Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).

"The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.' " Webb, 433 F.3d at 687 (quoting S.S.R. No. 85–28 (1985)). Courts have found that step two is "a de minimis screening device [used] to dispose of groundless claims." Id. (quoting Smolen, 80 F.3d at 1290. Therefore, the ALJ may only find that a claimant lacks a medically severe impairment or combination of impairments when his conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687 (quoting S.S.R. 85–28).

### A. Plaintiff's Physical Impairments

The ALJ found that although Plaintiff allegedly suffered from chronic low back pain and treatment notes showed some tenderness in the lumbar spine, Plaintiff exhibited a full range of motion in his back. (AR 13, 200.) A September 6, 2012 record notes lumbar spine has tenderness and "L spine full ROM, but with pain." (AR 264.) Another record from January 17, 2013, notes a normal musculoskeletal examination and "normal range of motion, muscle strength and stability in all extremities with no pain on inspection. (AR 262.)

Further, x-rays of Plaintiff's spine showed only mild spondylosis at L3-L5 and that the degenerative changes were stable. (AR 13, 198.) On September 25, 2003, x-rays of the lumbosacral spine had mild disk space narrowing posteriorly at L5-SQ which was consistent with mild degenerative disk disease. (AR 276.) Plaintiff was seen on March 8, 2013, by Ms. Bates who noted lumbar spine tenderness and the record notes spinal x-ray on January 22, 2013 shows stable degenerative changes. (AR 254.)

Plaintiff also alleged to be suffering from a shoulder problem. On July 18, 2011 Plaintiff had an x-ray of the right shoulder showed a type II lateral down slopping acromion process with acromial outlet impingement. (AR 13, 197.) However, physical examination revealed full range

1 of motion and on July 14, 2011, the consultative examiner did not find any shoulder problem.
2 (AR 13, 200, 262, 264.)  Dr. Yusufzie did not find any shoulder problem in his consultative
3 examination. (AR 201.)  Further, as recently as January 17, 2013, Plaintiff had a normal range of
4 motion with full muscle strength and stability in all extremities. (AR 13, 262.)  Medical records
5 revealed no pain on inspection of the extremities. (AR 13, 262.)

6 Plaintiff's medical records showed a history of hepatitis B, but Plaintiff had an abdominal
7 ultrasound that showed the liver was only slightly hyperechoic and no other abnormalities were
8 noted.  (AR 13.)  There was evidence of gastroesophageal reflux disease (GERD) but there was
9 no abdominal tenderness and diagnostic studies showed only very mild gastroesophageal reflux
10 with no other significant findings.  (AR 13, 229, 275.)  The ALJ found that there was no
11 evidence that the history of hepatitis B or GERD caused more than minimal limitations on
12 Plaintiff's ability to perform basic work activities because Plaintiff's physical examinations were
13 generally normal.  (AR 13, 231, 232, 233, 254-255, 258-259, 262, 263-264, 266, 281, 282, 283,
14 284, 285, 286, 287, 288, 289, 291, 292.)

15 The ALJ gave great weight to Dr. Yusufzie's July 14, 2011 consultative internal medical
16 examination which opined that Plaintiff had no physical limitations due to the generally normal
17 physical examination findings, including the normal range of motion with full strength and
18 stability in all extremities. (AR 14, 200-202.)

19 Plaintiff argues that the ALJ was misguided in assessing the statement completed by
20 Linda Bates, a certified physician assistant.  The ALJ gave little weight to the opinion of Ms.
21 Bates, because a certified physician's assistant's diagnosis or opinion is not an acceptable
22 medical source that can establish impairment. (AR 14.)  The Social Security regulations state
23 that "[m]edical opinions are statements from physicians and psychologists or other acceptable
24 medical sources that reflect judgments about the nature and severity of . . . impairment(s). . . ."
25 20 C.F.R. § 404.1527(a)(2).  Section 404.1513(a) lists acceptable medical sources and does not
26 include physician's assistants.  Physician's assistants are listed as other sources whose opinions
27 may be used "to show the severity of your impairment(s) and how it affects your ability to
28 work." 20 C.F.R. § 404.1513(d)(1).  The ALJ must consider the evidence of other sources in

8

1 determining if Plaintiff's impairments are severe. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th
2 Cir. 1987). However as another source, the opinion of a physician's assistant can be rejected by
3 offering reasons germane to the witness for doing so. Molina v. Astrue, 674 F.3d 1104, 1111
4 (9th Cir. 2012).

5 Plaintiff argues that the record establishes that Ms. Bates was being supervised by Dr.
6 Anupam Khandelwal citing to a single record that was electronically signed by Dr. Khandelwal.[2]
7 (AR 255.) However, this single record signed by Dr. Khandelwal is insufficient to show that Ms.
8 Bates was working so closely under the direction of Dr. Khandelwal that she could be considered
9 his agent. Molina, 674 F.3d at 1111.

10 Ms. Bates opined that Plaintiff can walk 1 block without severe back pain; sit and stand
11 for 1 hour and 5 minutes; and sit less than 2 hours and walk or stand about 2 hours in an 8 hour
12 workday. (AR 241.) Plaintiff would be required to have a job that permits shifting from
13 standing, walking, or sitting at will. (AR 241.) Plaintiff would need a job that included periods
14 of walking around during an 8 hour workday. (AR 241.) Plaintiff would have to walk 10
15 minutes for a period of 5 minutes. (AR 241.) Plaintiff would need unscheduled breaks of five
16 minutes. (AR 242.) Plaintiff must use a cane or other assistive device. (AR 242.) Plaintiff can
17 never lift 10 pounds or more; never stoop or crouch and rarely twist, climb stairs or ladders. (AR
18 242.) Plaintiff has no significant limitations on reaching, fingering or handling. (AR 242.)

---

[2] In his reply, Plaintiff argues that the action should be remanded for the ALJ to develop the record to determine if Ms. Bates worked closely under a doctor so that she could be acting as the doctor's agent. When applying for disability benefits, the claimant has the duty to prove that he is disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011). The facts in this case are not similar to other instances in which the ALJ was found to have a duty to further develop the record. See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to determine if claimants benefits were property terminated or should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).

Plaintiff is incapable of even low stress work due to severe back pain. (AR 243.) Plaintiff would be absent from work due to his back pain more than four days per month. (AR 243.) While recognizing that Ms. Bates opinion is a source that can be considered in determining the severity of an impairment and Plaintiff's ability to work, the ALJ found that there were no clinical or diagnostic findings to support Ms. Bates opinion. (AR 14.) The opinion was further discounted because it is in direct conflict with treatment reports which showed a normal range of motion with full muscle strength and stability in all extremities. (AR 14.) The ALJ provided germane reasons to reject the opinion of Ms. Bates.

Further, to the extent that Ms. Bates could have been considered to be an acceptable medical source, the ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. On May 24, 2012, Plaintiff had a normal examination with some abdominal tenderness. (AR 266.) On June 8, 2012, the record notes tenderness in his spine. (AR 265.) On September 6, 2012, the record notes lumbar spine has tenderness and "L spine full ROM, but with pain." (AR 264.) On January 17, 2013, Plaintiff had a normal musculoskeletal examination and the record notes "normal range of motion, muscle strength and stability in all extremities with no pain on inspection. (AR 262.) Plaintiff was seen on February 7, 2013, with no findings noted. (AR 258-259.) Plaintiff was seen on March 8, 2013, and had lumbar spine tenderness and the record notes spinal x-ray on January 22, 2013 shows stable degenerative changes. (AR 254.) The ALJ properly considered that the medical findings do not support the limitations set forth in the February 7, 2013 physical medical source statement prepared by Ms. Bates.

The ALJ did not err in finding that Plaintiff had not shown that his physical impairments significantly limited his ability to do work activities.

### B. Plaintiff's Mental Impairments

The ALJ found that Plaintiff had only minimal treatment for his alleged mental disorders. (AR 14.) Plaintiff's treatment records show appropriate mood and affect. (AR 14.) These findings are supported by the medical record which has no record of any mental health treatment

prior to March 8, 2013 and demonstrates that Plaintiff was taking no medication for his alleged mental health issues, even as of the date of the hearing. (AR 29, 196, 207.)

The ALJ considered the report of consultative examiner, Dr. Richard Palmer, which reported malingering and discounts the allegations of severe mental impairments. (AR 14.) Plaintiff had a comprehensive psychiatric evaluation by Dr. Richard Palmer on October 1, 2011. (AR 208-212.) Dr. Palmer noted that Plaintiff had a reserved manner, made good eye contact and had a flat facial expression. (AR 208.) Plaintiff's gross motor function was normal and he was apple to ambulate without assistance. (AR 208.) Dr. Palmer noted that Plaintiff's affect was not noticeably flat or depressed and although asked about symptoms in a number of different ways, Plaintiff "was never able to provide any symptoms." (AR 208.) Plaintiff has never taken any psychotropic medication. (AR 209.) Plaintiff was superficially cooperative during the examination. (AR 210.) Plaintiff's attention, calculation, and abstraction were impaired; concentration was good; and memory was fair. (AR 210-211.) Plaintiff's fund of knowledge was limited on current events. (AR 210.) Plaintiff's judgment and insight were limited. (AR 211.) His mood was euthymic;[3] and his affect was congruent with his mood. (AR 211.) Plaintiff's thought processes were logical and sequential and thought content was unremarkable. (AR 211.) Dr. Palmer diagnosed Plaintiff with adjustment disorder with depression, provisional; and R/O malingering,[4] and a Global Assessment of Function ("GAF")[5] score of 60. (AR 211.) Dr. Palmer opined that Plaintiff was capable of managing his own funds; was able to perform simple and complex tasks; had no social or intellectual impairments, his mental health symptoms

---

[3] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

[4] Plaintiff argues that the ALJ erred by considering malingering in the opinion, however, Plaintiff does not challenge the finding that he was not credible. Therefore, the Court finds that Plaintiff has waived the adverse credibility finding.

[5] "The GAF score is a 'multiaxial' assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning. . . . A score of 40 signifies '[s]ome impairment in reality testing or communication' or 'major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. . . . .' " Green v. Astrue, No.5:10-cv-01294-AJW, 2011 WL 2785741, at *2 n.2 (C.D. Cal. July 15, 2011) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. Text rev. 2000) (DSM-IV)). "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or coworkers)." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

would not impact his attendance at work; and Plaintiff's mental health symptoms did not significantly impair his functioning. (AR 212.)

The ALJ gave significant weight to the opinion of Dr. Palmer because it is consistent with and supported by the record and was also consistent with Plaintiff's report to Dr. Palmer that he is independent in his basic activities of daily living and does not need help preparing meals. (AR 15.)

The record shows that Plaintiff only received treatment by Dr. Mouanoutoua for mental health issues on two occasions. Dr. Mouanoutoua initially saw Plaintiff on March 8, 2013. (AR 256-257.) Plaintiff's appearance was appropriate and he was oriented to person, place, and time. (AR 256.) Plaintiff's behavior and psychomotor behaviors were unremarkable. (AR 256.) Plaintiff's speech was soft and his affect was constricted. (AR 256.) Plaintiff's mood was irritable and depressed. (AR 256.) Plaintiff's short term memory was impaired; sensorium was clear consciousness; and intellect was average. (AR 256.) Plaintiff's attitude was cooperative and attention was directed and distracted. (AR 256.) Plaintiff's self-perception was abasing; thought processes were logical and concrete; and thought content was unremarkable. (AR 257.) Plaintiff was diagnosed with major depression, recurrent, severe, and a GAF of 55. (AR 257.) The treatment plan was to follow up in two weeks and "offer psychoeducation, coping skills, problem solving, and CBT to manage his stress, anger, and depression." (AR 257.)

Dr. Mouanoutoua saw Plaintiff on March 22, 2013 for individual therapy. (AR 249-250.) There are no notes in the record reflecting any objective findings by Dr. Mouanoutoua for this visit. Plaintiff was to return in two weeks. (AR 250.)

On April 15, 2013, Dr. Mouanoutoua completed a mental residual functional capacity questionnaire for Plaintiff. (AR 307-309.) Dr. Mouanoutoua diagnosed Plaintiff with major depressive disorder, severe. (AR 307.) Dr. Mouanoutoua reported that Plaintiff had drowsiness and fatigue due to his medications. (AR 307.) The form described certain categories of impairment. Relevant to this opinion, Category III precluded performance for ten percent of a workday; and Category IV precluded performance for fifteen percent or more of a workday. (AR 307.) Dr. Mouanoutoua opined that Plaintiff was impaired to Category IV in every area,

1  except for his ability to understand, remember and carry out very short and simple instructions;
2  make simple work-related decisions; and ask simple questions or request assistance which were
3  impaired to Category III.  (AR 307-308.)  Plaintiff would be absent from work five or more days
4  per month due to him mental impairments and treatment or care for them.  (AR 309.)  Plaintiff
5  was unable to complete an 8 hour workday five or more days per month due to his mental
6  impairments and treatment or care for them.  (AR 309.)

7        The ALJ found that Dr. Mouanoutoua's report was inconsistent with the treatment reports
8  which show that Plaintiff was oriented times four with an appropriate mood and affect.  (AR 15;
9  262.)  The ALJ properly considered that Dr. Mouanoutoua's opinion was not consistent with the
10 medical record as a whole.  Review of the entire medical record shows that, other than
11 consultative examinations, it is devoid of any mention of depression prior to March 2013.  "If a
12 treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory
13 diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case
14 record, [it will be given] controlling weight.' "  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007)
15 (quoting 20 C.F.R. § 404.1527(d)(2).)  However, "[i]f a treating physician's opinion is not given
16 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other
17 substantial evidence in the record, the Administration considers specified factors in determining
18 the weight it will be given.  Those factors include the '[l]ength of the treatment relationship and
19 the frequency of examination' by the treating physician; and the 'nature and extent of the
20 treatment relationship' between the patient and the treating physician."  Orn, 495 F.3d at 631
21 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).  The ALJ properly considered that Plaintiff had only
22 seen Dr. Mouanoutoua on two occasions and there are no records to indicate that Plaintiff had
23 continued his treatment.

24       The ALJ gave very little weight to the opinion of Dr. Mouanoutoua because there are no
25 clinical or diagnostic findings to support it, including the minimal treatment and report of
26 malingering.  (AR 15.)  The ALJ may reject the opinion of a treating physician who prescribes
27 conservative treatment but opines that the claimant suffers a disabling condition.  Rollins v.
28 Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating

physician where physician had prescribed conservative treatment and plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment). Here, although Plaintiff was diagnosed with depression and a GAF of 55, he was not prescribed any medication. The treatment plan was to follow up in two weeks and "offer psychoeducation, coping skills, problem solving, and CBT to manage his stress, anger, and depression." (AR 257.) This very conservative course of treatment is inconsistent with the severe limitations opined by Dr. Mouanoutoua.

Additionally, the record does not show that Dr. Mouanoutoua performed any objective testing on Plaintiff to support the level of impairment opined in his April 15, 2013 report. The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

The ALJ also considered that Dr. Kravatz, the state agency consultant opined that Plaintiff does not have a severe mental impairment. (AR 15.) On October 25, 2011, Dr. Kravatz completed a Psychiatric Review Technique on Plaintiff. (AR 213-223.) Dr. Kravatz found that Plaintiff was only mildly limited in his restrictions to daily living, difficulties maintaining social functioning, and difficulties maintaining concentration persistence or pace and had no repeated episodes of decompensation. (AR 221.) Dr. Kravatz found that Plaintiff's mental health impairments were not severe. (AR 213.)

The ALJ gave great weight to Dr. Kravatz opinion because it is consistent with and supported by the evidence, including Dr. Palmer' findings and opinion. (AR 15.) It is also consistent with Plaintiff's report that he is independent for basic activities of living, is able to make change and can manage his finances. (AR 15, 142, 150, 210, 211.) Plaintiff reported that he goes shopping, walks and drives a car and is able to go out alone. (AR 150.) Plaintiff goes out two to three times a week for several hours at a time. (AR 27, 150.) Plaintiff also reported an ability to manage his finances. (AR 309.) These activities are consistent with the opinion of Dr. Kravatz and inconsistent with the limitations opined by Dr. Mouanoutoua.

The ALJ did not err in finding that Plaintiff had not shown that his mental impairments significantly limited his ability to do work activities.

The Court finds that the ALJ's finding that Plaintiff does not have a severe physical or mental impairment is supported by substantial evidence in the record.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff's physical and mental impairments are not severe as defined by the Social Security regulations. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Doua Vang. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **June 3, 2016**

UNITED STATES MAGISTRATE JUDGE